## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Jessica Julien and Hollywood
Smiles ATL, LLC,                          Case No. 1:17-cv-04045

                       Plaintiffs,        Michael L. Brown
                                          United States District Judge
v.

Georgia Board of Dentistry, et al.,

                       Defendants.

_____/

## <u>ORDER</u>

This matter is before the Court on Defendants' Motion to Dismiss

(Dkt. 49), which the Court grants in part and denies in part.

## I.   Factual Background

The Georgia Dental Practice Act, GA. CODE ANN. § 43–11–1 *et seq.*,

authorizes the Georgia Board of Dentistry to "control and regulat[e] the

practice of dentistry" for "the protection of the public health." *Id.* § 43–

11–7.  The Governor appoints the Board's eleven members, nine of whom

are practicing Georgia dentists.  (Dkt. 1 ¶ 43.)  The Governor selects these

nine dentists from a slate of nominees put forward by the Georgia Dental Association.  (*Id.*)

In fulfilling its statutory duties, the Board may bring an action to enjoin any person "who without being licensed or registered to do so by the board engages in or practices the profession of dentistry."  (*Id.* ¶ 31 (citing GA. CODE ANN. § 43–11–2(e)).)  The Board may also issue cease-and-desist orders to "stop the unlicensed practice of dentistry."  GA. CODE ANN. § 43–11–7(17).  The unlicensed practice of dentistry is a felony punishable by a fine, imprisonment, or both.  (*Id.* ¶ 29 (citing GA. CODE ANN. § 43–11–50).)  Georgia law defines "practice of dentistry" to encompass a set of "procedures, operations, or services" enumerated by statute.  GA. CODE ANN. § 43–11–17(a).  It never mentions teeth whitening.  (Dkt. 1 ¶¶ 32–33.)

Plaintiff Jessica Julien worked as a dental assistant for more than fifteen years.  (*Id.* ¶¶ 97–98.)  She began her career as an Army dental-lab technician and, following an honorable discharge, worked as an assistant in cosmetic dental offices.  (*Id.*)  She has also managed business operations for a dental practice and has been trained to provide teeth whitening services to patients.  (*Id.*)  In May 2013, she rented office space

in Duluth, Georgia and opened her own teeth-whitening business —
Plaintiff Hollywood Smiles ATL, LLC ("Smiles").  (*Id.* ¶ 99.)  Plaintiffs
sold three levels of teeth-whitening packages, all using components
available online.  (*Id.* ¶¶ 100, 109.)  Customers typically self-applied the
products at her office, while Plaintiff Julien provided guidance and
supervision.  She might, for example, speak with a customer about the
benefits and drawbacks of certain products she had for sale, instruct
customers on the proper application of products, and provide a
comfortable setting in her office for customers to apply the products she
sold.  (*Id.* ¶¶ 100–101, 103–105.)

Plaintiff Julien operated Plaintiff Smiles for two years without
incident.  In May 2015, the Board's Chief Investigator, Agent Ryan
McNeal, posed as a customer to enter the Smiles office.  (*Id.* ¶¶ 112–113.)
He then revealed that he worked for the Board and had come to serve a
cease-and-desist order ("C&D order").  (*Id.* ¶ 114.)  Agent McNeal told
Plaintiff Julien that she had violated the Act by offering teeth-whitening
services and that, if she did not sign the order that day, she might face
criminal penalties.  (*Id.* ¶ 115.)  He told her that, by signing the order,
she would be prohibited from selling teeth-whitening products and any

3

associated services.  (*Id.* ¶ 116.)  He rebuffed her efforts to ask questions or explain her business and made misleading statements about the Board's authority.  (*Id.*  ¶¶ 117–118.)  At the point of the spear, Plaintiff Julien signed the order.  (*Id.* ¶ 120.)  The Board approved it four months later.  (*Id.* ¶ 122.)

Plaintiff Julien and her company sued the Georgia Board of Dentistry, nine of its members, its Executive Director, and the Attorney General of Georgia.  Plaintiffs allege the Board and its members (nearly all whom provide teeth whitening services in Georgia) colluded among themselves and with other Georgia dentists to exclude non-dentists — like Plaintiffs — from competing with licensed dentists in providing teeth-whitening services.  (*Id.* ¶ 2.)  Plaintiffs allege that "there is no present, significant, or substantiated harm that threatens public health and safety" by her and her company providing teeth-whitening services to customers.  (*Id.*)  Instead, she claims the Board's actions unreasonably restrain trade and competition in order to benefit financially Board members and other dentists who would like less competition in the sale of teeth-whitening services.  (*Id.* ¶ 4.)  She further claims the Board's actions aim to increase prices, reduce consumer choice, and restrict

output of teeth-whitening services in Georgia. (*Id.* ¶ 2.) Plaintiffs assert antitrust claims against Defendants under Sections 1 and 2 of the Sherman Act and Due Process and Equal Protections claims under 42 U.S.C. § 1983. (Dkt. 1.) Defendants moved to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). (Dkt. 49.) The Court granted the parties' motion for oral argument and now grants in part Defendants' motion to dismiss.

## II.  Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the motion to dismiss stage, a court accepts all well-pleaded facts accepted as true and construes all reasonable inferences in the light most favorable to the plaintiff as the nonmovant. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Detailed factual allegations are not required, but a pleading must offer more than

"labels and conclusions" or "a formulaic recitation of the elements of the cause of action."  *Twombly*, 550 U.S. at 555.

## III.   Discussion & Analysis[1]

### A.   Standing to Sue the Attorney General

Defendants move to dismiss all claims against the Attorney General, arguing Plaintiffs lack standing to assert a claim against him. (Dkt. 49-1 at 19–21.)  Plaintiffs counter that they may sue the Attorney General because he is the state official authorized to enforce the dental practice statute and regulations.  (Dkt. 55 at 38–39.)

The Court holds that Plaintiffs have not asserted standing against the Attorney General because they have alleged no injury fairly traceable to any action he took.  Even if the Attorney General were designated as the enforcer of this statute — which Defendants have argued he is not

---

[1] The Court recognizes that multiple other complaints in the Northern District of Georgia have raised certain similar claims as those alleged here and that those courts have entered orders granting in part and denying in part Defendants' motions to dismiss.  *See, e.g.*, *SmileDirectClub, LLC v. Ga. Bd. of Dentistry*, No. 1:18-cv-02328-WMR, 2019 WL 3557892, at *6 (N.D. Ga. May 8, 2019); *Colindres v. Battle*, No. 1:15-CV-2843-SCJ, 2016 WL 4258930, at *3 n.2 (N.D. Ga. June 6, 2016); *Collins v. Battle*, No. 1:14-CV-3824-LMM, 2015 WL 10550927, at *1 (N.D. Ga. July 28, 2015); *Eck v. Battle*, No. 1:14-CV-962-MHS, 2014 WL 11199420, at *8 (N.D. Ga. July 28, 2014).

— Plaintiffs have pointed to no more than conjectural or hypothetical injury that he has caused them. *See Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011) (holding no standing where "plaintiff's injuries were not fairly traceable to a public official because the plaintiff had failed to allege how that official had caused those injuries").

And in their brief in response, Plaintiffs do not address this defect in their claims, instead only arguing that the Attorney General has the authority "to prosecute in the criminal courts of this state any official, person, firm, or corporation which violates any criminal statute while dealing with or for the state or any official . . . board or appointee thereof." (Dkt. 55 at 39 (citing GA. CODE ANN. § 45–15–10).) That may be true, but it does not sufficiently allege any facts about harm the Attorney General has caused Plaintiffs. (*See* Dkt. 65 at 5:20–6:4.) Plaintiffs have certainly alleged they suffered an injury from the conduct of the Board but have not tied the Attorney General into it. The Court thus dismisses Plaintiffs' claims against the Attorney General and terminates him as a party defendant.

7

**B.   Sovereign Immunity**

Defendants argue that sovereign immunity limits Plaintiffs' official capacity claims against the individual Board members solely to prospective relief and bars their claims against the Board entirely.  The Court agrees.

Sovereign immunity protects Defendant Georgia Board of Dentistry because it is an arm of the State.  In *Manders v. Lee*, the Eleventh Circuit set out four factors to determine whether an entity is an arm of the State: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."  338 F.3d 1304, 1309 (11th Cir. 2003).  As expounded on during the oral argument hearing, each factor weighs in favor of sovereign immunity here:

- The Legislature created the Board through statute.  *See* GA. CODE ANN. § 43–11–2.  And the Board is a division of Georgia's Department of Community Health, which is itself protected by sovereign immunity.  (Dkt. 65 at 35:1–10.)

- The Act refers to the Board members as state officials, specifically by reference to "other state officials."  *See* GA. CODE ANN. § 43–11–

8

6 ("Each member of the board shall receive the expense allowance . . . and the same mileage allowance for the use of a personal car as that received by other state officials and employees. . . .").

- The State maintains ultimate control over the Board. The Governor has the power to appoint (and remove) all of the Board's members. GA. CODE ANN. § 43–11–2(b)(1); § 43–1–14; § 43–1–17. The Georgia Senate likewise confirms all appointments. *Id.* § 43–1–16.

- State appropriations fund the Board. (Dkt. 65 at 30:1–2.) And by statute, the Board must remit to the state treasury any licensing fees it collects. GA. CODE ANN. § 43–1–3(a)(6). (Dkt. 65 at 30:3–4.)

- Georgia's State Law Department provides the Board's legal defense here. (Dkt. 65 at 29:23–30:10.)

The Georgia Court of Appeals has also held that the Board is an instrumentality of the State and is entitled to sovereign immunity, a decision to which the Court provides great deference. *See Ga. State Bd. of Dental Exam'rs v. Daniels*, 224 S.E.2d 820, 821 (Ga. Ct. App. 1976). This Court likewise holds that the Board acts as an "arm of the State" and sovereign immunity bars Plaintiffs' claims against it. *See*

9

*SmileDirectClub*, 2019 WL 3557892, at *3 (finding Georgia Board of Dentistry protected by sovereign immunity).

Ordinarily, the Eleventh Amendment bars claims against state officials sued in their official capacities seeking retrospective or compensatory relief.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  An exception to that general rule is provided by the doctrine articulated in *Ex parte Young,* 209 U.S. 123 (1908), whereby federal courts have "found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law."  *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 73 (1996) (internal quotation marks omitted).  The parties agree this exception applies and permits Plaintiffs to maintain claims against the Board members in their official capacities for "prospective equitable relief to end continuing violations of federal law." (Dkt. 49-1 at 26 n.9 (quoting *Summit Med. Assocs. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999)).)

The Court thus dismisses Plaintiffs' claims for monetary damages against Board members in their official capacities.  (*See, e.g.*, Dkt. 1

10

¶¶ 178, 189.)  Plaintiffs' official capacity claims against Board members for prospective injunctive relief, however, may proceed.

### C.   Qualified Immunity

Plaintiffs have also asserted claims against the Board members in their individual capacities.  Defendants say those claims should be dismissed as barred by qualified immunity.  They argue that no clearly established law existed at the time to put the Board members on notice that "fulfilling their duties under Georgia's Dental Practice Act would subject them to liability" under either § 1983 or the Sherman Act.  (Dkt. 49 at 2.)  The Court agrees.

A court may dismiss a complaint under Rule 12(b)(6) "when its allegations, on their face, show that an affirmative defense bars recovery on the claim."  *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).  The affirmative defense of qualified immunity in particular "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.

11

2002)).  As a result, unless a plaintiff's "allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Cottone*, 326 F.3d at 1357.[2]

"[O]nly a decision of the United States Supreme Court, [the Eleventh Circuit], or the highest court of the state in which the case arose" can clearly establish a right.  *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1280 (11th Cir. 2002).  "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just

---

[2] Courts most commonly apply qualified immunity to constitutional claims.  Nothing, however, limits this protection to such claims and, from the very start, the Supreme Court explained that qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  This simple statement does not limit the protection to constitutional claims.  The Fifth Circuit has also expressly applied qualified immunity to an antitrust claim.  *See Affiliated Capital Corp. v. City of Houston,* 735 F.2d 1555, 1570 (5th Cir. 1984) (en banc), *abrogated in part on other grounds by City of Columbia v. Omni Outdoor Adver., Inc.,* 499 U.S. 365, 383–84 (1991).  And, the Eleventh Circuit has recognized that "the qualified immunity defense is so well-rooted in our jurisprudence that only a specific and unequivocal statement of Congress [in a statute] can abolish the defense."  *Tapley v. Collins*, 211 F.3d 1210, 1216 (2000).  Defendants thus may avail themselves of the qualified-immunity defense as to all Plaintiffs' claims.

suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Id.* (emphasis omitted) (internal quotation marks omitted).

In arguing against the applicability of qualified immunity, Plaintiffs claim that "[t]he Board members, by contrast, carry out no similar public function by pursuing their own economic interests to exclude competitors." (Dkt. 55 at 23.) According to Plaintiffs, qualified immunity does not apply because Defendants are "private actors pursuing private interests." (*Id.* at 23–24, 34 n.11.) The Court disagrees with this characterization. While Plaintiffs object to some of the Board members' actions, it cannot reasonably be said that the members serve *no* "public function" such that are not state actors. *See Filarsky v. Delia*, 566 U.S. 377, 393 (2012) (conferring qualified immunity on a part-time government attorney who, "[t]hough not a public employee," "assist[ed] in conducting an official investigation"). And Plaintiffs have pointed to nothing that would clearly establish that the Board members' issuance of a C&D order to Plaintiff Julien for her operation of Plaintiff Smiles

13

without a license to practice dentistry was illegal or would violate Plaintiffs' constitutional rights.

In response, Plaintiffs cite the Supreme Court's opinion in *North Carolina State Board of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101 (2015), and its 1941 opinion in *Fashion Originators' Guild of Am., Inc. v. F.T.C.*, 312 U.S. 457 (1941), to show that the law was clearly established. The Court finds these cases inapposite. In *North Carolina State Board*, the Supreme Court addressed only state-action immunity — it declined to pass judgment on whether the North Carolina board's actions violated those plaintiffs' constitutional rights or the antitrust laws. 135 S. Ct. at 1115. On that basis alone, that case did not clearly establish the law. (*See also* Dkt. 65 at 59:7–16.)

In *Fashion Originators' Guild*, the Supreme Court considered the propriety of a C&D order issued by the Federal Trade Commission. 312 U.S. at 460. That case, however, concerned an alleged conspiracy between manufacturers of women's garments who "purposely boycotted and declined to sell their products to certain retailers." *Id.* at 461. It had nothing to do with a state regulatory board. (*See* Dkt. 65 at 61:15–18.) Thus, *Fashion Originators' Guild* could not possibly have put those

14

sitting on Georgia's state Board of Dentistry on notice that issuing Plaintiffs the C&D order for providing teeth-whitening products and services without a dental license would violate their constitutional rights or federal antitrust laws.   The Court agrees with Defendants that qualified immunity applies to Plaintiffs' individual capacity claims and dismisses each.

### D.    Plaintiffs' Antitrust Claims

Defendants also move to dismiss Plaintiffs' antitrust claims, arguing they lack antitrust standing and have not plausibly pled an antitrust claim.  (Dkt. 49-1 at 26.)  Essentially, Defendants reason that because Plaintiff Julien signed the C&D order, she caused her own injury and that such a "self-inflicted injury" cannot confer antitrust standing. (*Id.* at 27.)

"Antitrust standing is best understood in a general sense as a search for the proper plaintiff to enforce the antitrust laws." *Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1448 (11th Cir. 1991).  And "[t]he antitrust injury requirement ensures that the plaintiff, although motivated by private interests, is seeking to vindicate the type of injury to the public that the antitrust laws were designed to prevent." *Palmyra*

15

*Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010).  Defendants contend Plaintiff Julien voluntarily entered the C&D order, thus preventing any claim of an actual injury from their conduct.   Plaintiffs, however, allege that the Board's investigator approached her without notice and under the guise of being a customer, threatened her with fines and imprisonment, made false and misleading statements, repeatedly rebuffed her questions or gave incomplete answers, and insisted that she sign the order without an attorney present. (Dkt. 1 ¶¶ 112–127.)  Plaintiffs further say the Board took this action against her to prevent her from competing with licensed dentists for the provision of teeth-whitening services and with the "aim to increase prices, reduce consumer choice, and restrict output of teeth whitening services in Georgia. (*Id.* ¶¶ 1–3.)  These allegations present a classic antitrust injury. *See Colindres v. Battle*, No. 1:15-CV-2843-SCJ, 2016 WL 4258930, at *8 (N.D. Ga. June 6, 2016) (finding plaintiff had pled antitrust standing on similar facts even though the Board had only threatened enforcement and not yet issued C&D order).   Plaintiffs' allegations plead an injury sufficient to confer antitrust standing.

16

The Court likewise finds Plaintiffs have sufficiently alleged a plausible antitrust claim. The Sherman Act prohibits any "contract, combination . . . or conspiracy . . . in restraint of trade." 15 U.S.C. § 1. A plaintiff pleads concerted action by alleging facts manifesting a "unity of purpose or a common design and understanding or a meeting of minds," or "a conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764, 768 (1984) (internal quotation marks omitted). The Court finds that Plaintiffs have sufficiently alleged both express written agreements and additional conduct suggesting overarching agreements to exclude non-dentist teeth whiteners from the market. Plaintiffs allege that after receiving complaints from dentists about the prices at which non-dentists offered teeth whitening services, the Board began to investigate such teeth-whitening businesses. (Dkt. 1 ¶¶ 75–76.) Plaintiffs reference the Board's meeting minutes and allege that "the Board agreed to take action consistent with practicing dentists' requests to shut down non-dentist providers of competing teeth whitening services." (*Id.* ¶ 77.) As stated during the hearing with the parties, the Court finds the *Colindres* opinion persuasive on this point:

> The manner in which the Board functions provides the context for their concerted activity. Plaintiffs have alleged

> that upon receiving complaints from dentists, the Board made
> the decision to investigate the provision of teeth-whitening
> services by non-dentists and to issue or threaten to issue
> cease-and-desist letters to non-dentists providing this service.
> Under these particular circumstances, the Court does not find
> that greater pleading detail is required at the motion to
> dismiss stage.

*Colindres v. Battle*, No. 1:15-CV-2843-SCJ, 2016 WL 4258930, at *9 (N.D. Ga. June 6, 2016) (denying defendants' motion to dismiss antitrust claims). The Court agrees with this analysis and denies Defendants' motion as to the antitrust claims.

Defendants also argue that the intra-corporate immunity doctrine applies and bars Plaintiffs' antitrust claims. (Dkt. 49-1 at 32.) The Court disagrees. "The relevant inquiry" is whether Defendants are "separate economic actors pursuing separate economic interests, such that the agreement deprives the marketplace of independent centers of decision making . . . and thus of actual or potential competition." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010) (internal citations and quotation marks omitted). Plaintiffs' complaint plausibly alleges that most Defendant Board members are actual or potential competitors of Plaintiffs' (Dkt. 1 ¶¶ 46, 92), and the Court cannot ignore this factual allegation at the pleading stage. *See N.C. State Bd. v. F.T.C.*, 717 F.3d

359, 371–72 (4th Cir. 2013) (noting that F.T.C. concluded that practicing dentists on dental board were "actual or potential competitors" with "the capacity to conspire").

Defendants also dispute whether the Board members had a personal financial interest in excluding competitors from the market for teeth-whitening services. (Dkt. 49-1 at 33.) But again, the Court accepts the allegations in Plaintiffs' complaint as true and draws reasonable inferences that at least some of these board members have a financial interest in squashing competition from non-dentists. (*See* Dkt. 1 ¶ 47.) The Court thus finds Defendants' intra-corporate immunity argument unavailing.

While Plaintiffs ultimately may not be able to prove concerted action to restrain trade unreasonably, the Court finds that Plaintiffs' Sherman Act antitrust claims, as pleaded, survive a Rule 12(b)(6) motion to dismiss as it relates to the Defendant Board members.[3]

---

[3] The Board members may still raise immunity defenses at later stages of this litigation, such as in a motion for summary judgment, if appropriate.

19

### E.   Plaintiffs' Constitutional Claims

Plaintiffs allege claims under § 1983 against all Defendants for violating their Fourteenth Amendment Equal Protection and Due Process constitutional rights.  Defendants move to dismiss, contending that Plaintiffs fail to state a claim for relief under either provision, that Plaintiffs lack standing to assert such claims, and that such claims are barred by the statute of limitations.  (Dkt. 49-1 at 34–40.)

First, Defendants contend they are not "persons" subject to suit under § 1983.  (*Id.* at 37.)  That is true, at least in part.  The Supreme Court has explained that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989).  The Eleventh Circuit has, in fact, held that *Will* and its progeny "make clear that no remedy is provided by § 1983 for a Complaint naming only state officials in their official capacities and seeking monetary damages."  *Tindol v. Ala. Dep't of Revenue*, 632 F. App'x 1000, 1002 (11th Cir. 2015).  This provides another basis for dismissing Plaintiffs' official capacity claims for monetary damages against the Defendant Board members.  But their claims for prospective nonmonetary relief may go forward.  A state official in his or

her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10.

The Court also rejects Defendants' statute of limitations argument. (Dkt. 49-1 at 36.)  The statute of limitations is an affirmative defense, which means that dismissal at the pleading stage is only appropriate "if it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises, Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (internal quotation marks omitted).  A two-year statute of limitations generally applies to Section 1983 claims.  *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (per curiam) ("Georgia's statute of limitations is two years.").  There seems to be a dispute about the effective date of the C&D order — whether it was when Plaintiff Julien signed it or when the Board docketed it — and thus when Plaintiffs' claims technically began to accrue.  (Dkt. 49-1 at 36; 55 at 36–37.)  Because the Court cannot determine from the face of the complaint the applicability of the limitations period, the Court denies Defendants' motion on the statute of limitation argument.

The Court also rejects Defendants' argument that Plaintiffs lack standing for their constitutional claims because a "self-inflicted injury" cannot establish an injury for standing purposes.  Defendants argue that "[a]ny uncertainty about whether Plaintiffs are prohibited from engaging in retail sales of OTC [over-the-counter] tooth-whitening products is of Plaintiffs' own making, and they lack standing."  (Dkt. 49-1 at 35.)  As with antitrust standing, the Court likewise holds that the allegations in Plaintiffs' complaint sufficiently show an injury to confer standing.[4]

### 1.    Count III – Due Process Claim

Plaintiffs allege Defendants violated their due process rights under the Fourteenth Amendment by prohibiting them from engaging in retail sales of commercially available OTC products for home use.  Plaintiffs allege no rational relationship exists between the actions of the Board members and any legitimate government interest.   (Dkt. 1 ¶ 175.) Rational-basis review asks "(1) whether the government has the power

---

[4] Defendants argue that Plaintiff Smiles has no Article III standing because it has suffered no alleged harm.  The Court finds this argument unavailing.  The harms suffered by Plaintiff Julien and Plaintiff Smiles are intertwined.  Even though Plaintiff Smiles was not a party to the C&D order, Plaintiffs allege it suffered harm through the closing of the business following the C&D order.

or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n,* 558 F.3d 1301, 1306 (11th Cir. 2009).

Defendants argue Plaintiffs' actions "at the very least, could conceivably mislead a customer into believing that Julien had some specialized expertise.  That possibility creates a rational basis for the Board's action." (Dkt. 49-1 at 39 (internal citations omitted).)  The Court, however, finds these arguments unsuitable for a motion to dismiss, when the Court must accept Plaintiffs' well-pleaded allegations as true and draw reasonable inferences in their favor.  *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1227 (11th Cir. 2018).

Although Defendants may disagree with Plaintiffs' factual allegations, a motion to dismiss is not the proper stage at which to resolve this factual dispute.[5]  Construing the facts most favorably to Plaintiffs as the nonmoving party and drawing all reasonable inferences in their

---

[5] Defendants themselves mention this distinction, citing *Holton v. Battle*, which "granted *summary judgment* to the Board on a nearly identical Equal Protection claim." (Dkt. 49-1 at 40.)  This is a motion to dismiss, however.  And the Court finds Plaintiffs' complaint sufficiently alleges violations of their Fourteenth Amendment rights.

favor, the Court holds that Plaintiffs have adequately alleged a plausible due process claim. *See SmileDirectClub*, 2019 WL 3557892, at *6 (finding similar allegations about digital dental scans sufficient to state a viable due process claim).

### 2.    Count IV – Equal Protection Claim

Plaintiffs also allege no rational reason exists for the Board members' distinction between Plaintiffs and other persons, such as traditional brick-and-mortar retailers and online sellers. (Dkt. 1 ¶ 184.) Plaintiffs instead argue that "the sole reason that the Board . . . issued the Order preventing Plaintiffs from engaging in the retail sale of OTC products for home use was to restrict competition between non-dentists and dentists." (*Id.*) As with the due process claim, Defendants disagree, arguing that providers of whitening services are not similarly situated with retailers of OTC teeth-whitening products. (Dkt. 49-1 at 40.)[6] The

---

[6] There seems to be some confusion surrounding whether Plaintiffs seek to challenge the allegedly arbitrary distinction between them and "traditional brick-and-mortar retailers and online sellers" or between them and "other persons that received cease-and-desist orders for unauthorized practice but were not otherwise prohibited from engaging in the otherwise lawful retail sale of teeth whitening products." (Dkts. 1 ¶¶ 184, 186; 65 at 71:5–14.) The Court, however, need not resolve this potential confusion on a motion to dismiss, as the Court holds that Plaintiffs have alleged both in their complaint.

Court, however, concludes that Plaintiffs have sufficiently alleged an equal protection claim to survive the motion to dismiss. The Court denies Defendants' motion as to both of Plaintiffs' constitutional claims.

## F.    Plaintiffs' Request to Amend

Having granted in part and denied in part Defendants' motion to dismiss, the Court declines to grant Plaintiffs an opportunity to amend their complaint. In the final paragraph of their response brief, Plaintiffs contend that the Court should grant them leave to amend. (Dkt. 55 at 40.) Plaintiffs, however, did not move to amend, attach any proposed amendments, or suggest in any way how they intend to revise their complaint. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (citing FED. R. CIV. P. 7(b)(1)). The Eleventh Circuit "precedent is clear: the proper method to request leave to amend is through filing a motion, and such motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 666 (11th Cir. 2015). Plaintiffs have declined to follow this method and the Court thus declines to grant Plaintiffs leave to amend. *See id.* at 665 (holding district court did not abuse its discretion by denying plaintiffs' request to amend

complaint where they "did not file a motion for leave to amend but instead included the request for leave to amend in the memorandum they filed in opposition to the motion to dismiss").

## IV.   Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. 49).

The Court **GRANTS** the motion with regard to Defendant Georgia Board of Dentistry and Defendant Attorney General Christopher M. Carr.  The Court **DISMISSES** them as party defendants and **DIRECTS** the Clerk to **TERMINATE** them from the docket.

The Court **GRANTS** the motion with regard to the claims against Defendant Board members in their individual capacities and **DISMISSES** those claims.

The Court **DENIES** the motion with regard to claims against the Defendant Board members and Executive Director in their official capacities, in part.  To the extent Plaintiffs seek money damages against Defendants in their official capacities, the Court **DISMISSES** those claims.   Plaintiffs may proceed with their claims for prospective,

injunctive relief against the Individual Board members and Executive Director in their official capacities.

**SO ORDERED** this 12th day of February, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE